BEN JAUDON, CITY TREASURER, APPELLANT, v. JOHN LANTZ ET AL., RESPONDENT.

and

BEN JAUDON, CITY TREASURER, ETC., RESPONDENT, v. JOHN L. LANTZ ET AL., DEFENDANTS; HANCHETT BOND CO., AND ROBERT BARRIE, APPELLANTS; JOHN L. LANTZ, RESPONDENT.—47 S. W. (2d) 188.

Kansas City Court of Appeals.   February 1, 1932.

*George Kingsley* and *J. C. Petherbridge* for City Treasurer.

*Watson, Gage, Ess, Groner & Barnett* for Lantz.

*John C. Loos* for Barrie & Hanchett Bond Co.

BOYER, C.—The above captioned cases reached this court as two separate appeals by different parties to the same cause of action.

The appeals were taken and allowed at different times and were separately sent up. By agreement the appears are consolidated and the record is presented in a joint abstract.

The city treasurer of Kansas City instituted an action in equity against John L. Lantz, Hattie Andrews, George W. Thomas, Fannie B. Briney, Mabel D. Shaw, John Quincy Hill, Hanchett Bond Company, and Robert Barrie. The amended petition recites the capacity of plaintiff as that of city treasurer of Kansas City; that under an ordinance and the city charter a certain district sewer was constructed which was paid for by issuing special tax bills against property in the sewer district; that among other lots charged with said cost, lot 5 in Indiana Heights, then owned by Hattie Andrews, was charged with the sum of $958.84, and tax bill No. 76 was issued therefore November 15, 1920; that at the same time and as a part of the cost of said sewer there was charged against lot 6 in said addition, then owned by John L. Lantz, the sum of $958.56, and tax bill No. 77 for said amount was issued against said lot; that said bills were duly certified by the Board of Public Works of Kansas City to the city treasurer for collection and were duly entered on the tax bill record in his office as required by the city charter; that on October 20, 1922, John L. Lantz, who owned said lot 6 chargeable with tax bill No. 77, by mistake paid tax bill No. 76 on said lot 5 amounting to $1105.56, being principal and interest then due; that he received a duly executed receipt and lot 5 was released from the lien of said tax bill No. 76, and said tax bill surrendered and cancelled; that the tax bill on lot 5 has never been paid by the owners of said lot and in equity said lot 5 stands charged with the lien of said tax bill; that both of said bills, No. 76 on lot 5 and No. 77 on lot 6, were owned by Hanchett Bond Company and Robert Barrie; that after tax bill No. 76 had been issued against said lot 5, Hattie Andrews transferred said lot to George W. Thomas, who in turn transferred the west half of said lot to Fannie B. Briney and Mabel D. Shaw, and the east half of said lot to John Quincy Hill who are the present owners; that Hattie Andrews knew that said tax bill had been issued on lot 5 and was a lien thereon at the time she sold and transferred same; that said tax bill had never been paid by her and that her grantees, immediate and remote, knew the same facts at the time they acquired the property.

The prayer for relief was for an order and judgment that tax bill No. 76 on lot 5 had not been paid and is a lien on said lot for the amount thereof, and that tax bill No. 77 on lot 6 has been paid, and that the records in the office of the city treasurer be corrected accordingly, and for all other proper relief in equity.

To this petition defendant Lantz filed an amended answer and cross-bill in which the construction of the sewer and the issuance of

the tax bills, and the ownership of the lots in question are set forth the same as in the petition, as well as the fact that said tax bills were duly issued and certified to the city treasurer for collection and were duly entered on the tax bill record in his office as required by the city charter. The answer then alleges that shortly prior to October 20, 1922, Lantz received from plaintiff notice of the assessment against lot 6 and that said notice demanded payment within a stated time; that on or about said date, in pursuance of said notice, Lantz went to the office of the city treasurer for the purpose of paying said tax bill and to have said lot 6 released from the lien; that at said time he paid the city treasurer the sum of $1105.56, principal and interest on said tax bill, and at the same time paid two other tax bills; that by a mistake of the clerk in the office of the city treasurer, said clerk marked tax bill No. 76 on lot 5 as being paid, and by mistake lot 5 was released from the lien of said tax bill leaving the lien upon lot 6 standing unpaid; that the tax bill on lot 5 was never paid by the owner of the lot, although the records show that it has been paid and the lien of the tax bill cancelled and released; that at said time both of said tax bills were owned by Hanchett Bond Company and Robert Barrie.

It is further alleged in said answer that on or about May 31, 1923, Robert Barrie began an action to recover against defendant Lantz based upon the tax bill issued against lot 6; that summons was served upon Lantz, and that said action is pending; that by reason of the mistake of the clerk in plaintiff's office the lien of said tax bill on lot 6 has never been satisfied, but that through mistake said plaintiff herein caused the lien against lot 5 to be cancelled leaving the lien existing against lot 6. It is further averred that defendant Lantz has no remedy at law for complete and adequate relief. The relief sought by Lantz, as evidenced by the prayer, is this: That plaintiff be directed to satisfy the lien of tax bill No. 77 against lot 6; that judgment be entered against Robert Barrie restraining him from proceeding in the suit instituted to enforce the lien against lot 6, and that the cloud created by said tax bill and suit thereon upon defendant's title to lot No. 6 be removed, and that it be decreed that Robert Barrie and Hanchett Bond Company have no right, title or interest to any lien against lot 6, ''and that they be given the right to proceed against said Hattie Andrews, owner of said lot 5, and the plaintiff individually or as agent for the holders of said tax bills aforesaid, to recover whatever amount is due against lot 5 aforesaid.'' That plaintiff treasurer, Hattie Andrews, and the owners of the tax bill against lot 5 should be decreed to protect the subsequent grantees of said property from any lien against lot 5 by reason of the wrongful act of the plaintiff, and to protect them against any liability on account of the enforcement of tax bill No. 76

against lot 5 and from mistake in releasing the lien on said lot; that in equity said lot 5 should be charged with the sum paid by Lantz, and that plaintiff and Hattie Andrews should be decreed to satisfy the same, and that lot 6 should be released from any claim based on tax bill No. 77. Other general relief is also requested.

The Hanchett Bond Company and Robert Barrie filed answer to the answer and cross-bill of Lantz in which the issuance of the tax bills and their certification to the city treasurer was reiterated. And it is alleged that by the provisions of the city charter and the terms of the tax bills the sums so charged against the lots are special liens against the real estate upon which the assessment is made; that by the provisions of the city charter the tax payer may pay the amount of any special tax bill to the city treasurer and receive a receipt therefor; that they are the owners of the tax bills in question; that about October 20, 1922, they were informed that tax bill No. 76 against lot 5 had been paid and the special tax bill record in the city treasurer's office so showed; and as required by the city charter they presented said tax bill No. 76 to the city auditor and received the sum of $1105.84 in payment thereof; that said lot 5 was thereupon released and discharged from the lien of said tax bill and said tax bill No. 76 was delivered to the city auditor for the purpose of cancellation; that tax bill No. 77 against lot 6 has never been paid by the owner thereof and said lot has not been released or discharged from the lien, and that by reason thereof defendant Barrie instituted suit May 31, 1923, against John L. Lantz as the owner of said lot 6 to recover the amount of tax bill No. 77 and to enforce the lien thereof against lot 6, which said suit is pending. It is admitted that the owner of lot 5 conveyed same as alleged in the cross-bill and it is admitted that as the record now stands in the city treasurer's office tax bill No. 76 against lot 5 has been paid and the lien discharged, and that said tax bill No. 77 against lot 6 has not been paid and the lien thereof against said lot has not been discharged but is valid and existing. The prayer was that the cross-bill filed by Lantz be dismissed and that he be denied the relief prayed; that the court decree that the Hanchett Bond Company and Robert Barrie, as the owners of tax bill No. 77, are entitled to a judgment against lot 6 in the sum due and for the enforcement of the lien of said amount against said property; and that the court protect and preserve the lien rights of the holders of said tax bill, and for other just relief.

The reply of the plaintiff to the answer and cross-bill of Lantz denied that the clerk in the office of plaintiff made a mistake and credited the payment made by Lantz to the wrong lot, but alleges the fact to be that the said clerk credited the lot designated by said Lantz as the one upon which he wanted to pay and did pay said tax; and if a mistake was made and the wrong lot credited thereby

such mistake was made by the said Lantz in directing payment on the wrong lot. The reply further alleges that it was the duty of said Lantz when he received the receipt from the city treasurer to examine same and ascertain if it correctly described the property on which he desired to pay the tax and if a mistake had been made it was his duty then and there to call attention to the same and have it corrected before leaving the office.

Upon these pleadings the cause proceeded to trial. Plaintiff introduced his evidence and defendant Lantz introduced his evidence, and all of it was directed in the main to the inquiry as to who was responsible for the mistake, whether the clerk in the office of plaintiff or defendant Lantz. The clerk testified that he had been employed in the office of the city treasurer for over a year at the time of the occurrence and at the time of trial was employed by defendant bond company; his work for the city treasurer was in the Special Tax Department; that his duties were to wait on taxpayers and make out receipts; that on October 19, 1922, defendant Lantz came into the office and asked to pay sewer tax on lot 5. He was shown a copy of a tax receipt made out to Lantz for tax bill No. 76 on lot 5, showing the total amount due, and said that he prepared it at the request of Lantz and handed it to him, and when asked what specific property Lantz said he wanted to pay on, the witness answered: "He evidently told me lot 5;" that there was no other way that he could get the information. He was asked: "Q. Did he tell you? A. Absolutely." He said that he wrote up the receipt and described the property on which Lantz said he wanted to pay sewer tax. The receipt was put in evidence. At the time it was handed to Lantz by the clerk it was not a receipt, but a mere statement and did not become a receipt until the bill was paid and receipt properly signed. It recited at the top: "This is not a receipt until stamped paid by cashier and countersigned by city auditor." At the bottom of the receipt there was printed in large black type these words: "Please examine all receipts before leaving this office." The receipt bore the perforated marks and words: "Paid 10-20-22. C. Treas." Statements for such taxes were prepared by the clerk in one room and the tax paid in another room, and after the statements were paid and the receipt obtained, they were sent back to the clerk and the tax records were then marked satisfied; that was done in the present case and the record of the tax against lot 5 was so marked and released. The clerk testified that the record did not always show the owner of the property, and that he was not concerned about that, but made out the statements in accordance with directions received from an applicant who desired to pay taxes and prepared the receipt in the name given to him. The special tax record in the treasurer's office showing special sewer tax against lots 5 and 6 was put

in evidence and referred to and it shows the name of Hattie Andrews as the owner of lot 5, and tax bill No. 76 against same giving the amount thereof, and showing payment of the total sum of $1105.84, October 20, 1922. It next shows the name of M. Z. Noble as the owner of lot 6, subject to tax bill No. 77, with no record of payment and the notation that suit was commenced May 13, 1923, and notice thereof filed May 31, 1923. The witness testified that the records showing the names of the supposed owners came from another department to the treasurer's office and that he had no idea as to who the owners of various properties were except as the record indicated; that Lantz came in and gave the number of the lot and the number of the tax bill he wanted to pay and that he made up the record and gave the receipt on the lot asked for, and that is the only way he could write it, and that he wrote the description of the property given.

On cross-examination he stated that he had an individual recollection of this transaction of his own knowledge; that he was then employed by Hanchett Bond Company and knew they were interested; that in the spring of 1923, he was endeavoring to collect the tax bill for the company on lot 6 from Lantz; that notices were sent out; that Lantz said there was some mistake and that he was satisfied he did not owe anything; that he would not talk it over or entertain any proposition and the matter was turned over to the attorney. He was asked if Lantz told him that he owned lot 5 when he came in to pay the tax bill. The answer was: "He in all probabilities did." He was then asked if Lantz told him that he wanted to pay on lot 5, and answered: "He did if I gave him that receipt. That is the receipt." He testified that it is easy to make a mistake and that he recalled what Lantz said "only from the fact I made a receipt on the property asked for." At the same time some receipts were also made out on lot 6; Lantz did not tell him that he owned any property; that on the same day Lantz paid more than one tax bill, all as one transaction. There were some statements made out for taxes on lot 6 for small amounts; the receipts were made out consecutively, the first one was No. 2349 for tax bill on lot 5, the next one was No. 2350, on lot 6 for the sum of $35.44, and the next No. 2351, was on lot 6 for a total of eleven cents. The statements for taxes against lot 6 were for sewer bills for work done under different and other ordinances than that for the sewer bills against lots 5 and 6 heretofore mentioned. These different receipts are all in evidence and all bear the same punch mark showing payment October 20, 1922.

The attorney for the bond company was the next and only other witness offered by plaintiff. He stated that about the time he filed suit on tax bill No. 77 on lot 6, he had a conversation with defendant

Lantz; that he had first written him a letter that he held the tax bill for suit, in response to which Lantz called him and said he had paid the tax bill that the attorney was then trying to collect. The attorney then informed Lantz that he had investigated the records and found that the tax bill on lot 6 was not paid and the tax bill on lot 5 had been paid and released. Lantz replied that he had paid the tax on his lot and had a receipt for it. The attorney testified that he asked Lantz if he would not please get the receipt and look at it, that evidently there was a mistake. Lantz replied that he had paid his tax, that he had the receipt in his office and did not care to get it; "he knew he had paid his tax, and he didn't intend to go to any trouble about it; that I should be the one to worry, not him. He would not get his receipt but refused to." As a result suit was filed on the tax bill against lot 6 on May 31, 1923. On cross-examination it was shown that the bond company had received the money collected by the city treasurer on tax bill 76 against lot 5 and surrendered its tax bill, and thereafter the owner of lot 5 conveyed it to another. That was all of plaintiff's evidence.

Defendant Lantz in substance testified that he had been a practicing physician in Kansas City for twenty-two years; that he acquired lot 6 by deed in August, 1922; that he did not own any other property in the addition containing lot 6. The deed was offered in evidence. Witness said that at the time he acquired the lot he was informed that there was something more than $1000 in special taxes against it; that he assumed the obligation; that he went to the treasurer's office October 19, 1922, for the specific purpose of "cleaning up all that tax;" that he was well acquainted with the treasurer's office and went to the proper division; that he had been there on business "quite a little;" that he was "no novice there;" that he asked for the special taxes on lot 6; that he may not have asked for all the taxes on the lot for he knew that was a special sewer tax; that he asked for all the special taxes; that he did not tell the clerk he owned any other lots in the addition; that there was nothing said about it. He identified the three tax receipts and said they were delivered to him; that he went to the cashier's cage in another room and gave his check for the total amount "that afternoon." The check was dated October 19, 1922, and was for the total sum shown in the three receipts. Witness was asked if he examined the tax bills closely at the time and said: "I don't believe I did." . . . "I might deserve to go to jail for not doing that." Witness stated when he got the receipts, "I went to the cashier then;" that he obtained a blank check off the desk known as "a universal check." Witness thought he had paid his tax and when he found out differently he went to the treasurer's office and "had a rather sharp spat;" . . . "I could not believe I had

done such a thing as that." Witness further testified that he did not tell the clerk to make out a tax bill on lot 5.

On cross-examination he was asked if he read the receipt or the statement of taxes at the time and said: "I don't think I did." His attention was called to the words in black letters at the bottom of the receipt requesting that he please examine all receipts; he was asked why he did not do that and said: "That is an omission I expect I made in common with others." In reference to the receipt describing lot 5, he was asked: "If you had read it, would you have discovered it right there? A. If I had read it. Yes, that is a fact."

On the pleadings and evidence the court rendered a decree May 14, 1927, in which there are prolonged recitations of findings to the effect that a sewer was constructed under the provisions of an ordinance and the charter of Kansas City; that the cost was to be paid by special tax bills against property in the district; that at the time John L. Lantz owned lot No. 6; that defendant Hattie Andrews owned lot 5; that the tax bill against lot 5 was No. 76, and that the tax bill against lot 6 was No. 77, and the amount against each lot is set forth; that each of said tax bills was duly issued and certified by the Board of Public Works of Kansas City for collection and was duly entered on the tax bill record in the office of the city treasurer, as required by the charter of said city, on or about October 20, 1922. That defendant, owner of lot 6, went to the office of the city treasurer for the purpose of paying the tax bill against it and to have the lien on said lot 6 released; that he paid plaintiff the principal and interest due on said bill, and at the same time paid two other tax bills, all amounting to the sum of $1141.39; that by a mistake of the clerk in the office of the city treasurer the said clerk marked tax bill No. 76 on lot 5 as being paid and by mistake lot 5 was released from the lien of said tax bill leaving the lien upon lot 6 unpaid; that the tax bill on lot 5 has never actually been paid by the owner of said lot; that defendants Hanchett Bond Company and Robert Barrie own both of said tax bills; that lot 5 at the time the tax bill was issued against it was owned by Hattie Andrews, who since said time transferred said lot to defendant Thomas, who in turn transferred the west half thereof to defendants Briney and Shaw, and the east half to defendant John Quincy Hill, and that they are now the record owners of lot 5; that on May 31, 1923, defendant Barrie began an action against Lantz based on the tax bill issued against lot 6, which action was still pending; "that by reason of the mistake of the clerk in the plaintiff's office herein, the lien of said tax bill on lot 6 has never been satisfied, but that through the mistake of said clerk in entering satisfaction the plaintiff herein caused the lien against lot 5 to be cancelled, thereby leaving the lien existing against lot 6."

772

It was further found that defendant Lantz had no adequate remedy at law, and there is a further finding and decree in reference to defendant Mabel D. Shaw to the effect that she was an innocent purchaser of lot 5; and it was further found that defendants Hanchett Bond Company and Robert Barrie had an adequate legal remedy and were not entitled to equitable relief against any party to the cause; and there is a further finding that plaintiff, upon the petition and facts, is not entitled to any equitable relief, and that as between plaintiff and defendant Lantz said defendant is entitled to the remedy sought by his answer and ''that as between defendant Mabel D. Shaw and the plaintiff, the court finds that defendant Shaw is entitled to the remedy sought.'' It was then ordered, adjudged and decreed that tax bill No. 76, issued on lot 5, had been cancelled of record and cannot be reinstated thereon, and does not and cannot be made to constitute a lien upon said lot 5; that plaintiff is required and directed to satisfy the lien of tax bill No. 77, issued against lot 6; that defendant Barrie be restrained from proceeding further in the suit upon said tax bill or to enforce the lien thereof against lot 6, and that said Barrie and Hanchett Bond Company are ''decreed to have no right, title, or interest in, to, or upon any lien upon lot 6 aforesaid.'' And it was further ordered that defendants Lantz and Shaw recover their costs and have execution therefor.

Timely motions for new trial were filed by plaintiff and by defendants Hanchett Bond Company and Robert Barrie. Plaintiff's motion was overruled September 29, 1930, and plaintiff allowed an appeal October 7, 1930. The other motion for new trial was overruled October 27, 1930, and the appeal of the bond company and Barrie was then allowed.

OPINION.

The decree does not meet our approval. The owners of the tax bill against lot 6 were erroneously denied any relief in this proceeding. They had instituted a suit to test their rights and to enforce the lien of the tax bill against said lot prior to the time they were made parties to this action and required to plead therein. In their plea the facts were set forth, as they contend, and the court was requested to decree their rights and to adjudge to them a right of lien against lot 6 for the amount due on the tax bill issued against it, and for all further proper relief. The court found, we think erroneously under the evidence, that the tax bill owners had an adequate remedy at law and were not entitled to any relief against any party to this cause and so decreed. The court reached this conclusion no doubt upon its finding that plaintiff was responsible for the mistake made in his office, and that it was the mistake of the

clerk in plaintiff's office which caused the error, and the wrongful release of the bill on lot 5 instead of the one against lot 6. We cannot agree with such finding that the mistake of the clerk was the cause of the error, but are persuaded by the evidence that the proximate cause of the error was the negligence of defendant Lantz. The most that may be said upon this subject would be to repeat the testimony and the documentary evidence already set forth. We are mindful of the deference which should be shown to the finding of a trial court upon a conflict in oral testimony, but the evidence in this case is not confined to that class of proof. The documents are of persuasive weight. We are not bound by the conclusion of the trial court upon an issue of fact under such circumstances, but must meet and determine the issue of fact in a manner responsive to our own sense of duty and obligation. Viewing the entire record of the evidence, we are of opinion and hold that defendant Lantz was negligent in failing to examine the statement furnished to him by the clerk before paying it and in failing to read his receipt before he left the office. If this had been done the error in the statement would have been discovered as admitted by said defendant; and if discovered, of course, payment would not have been made and there would have been no error in the release of the tax bill on lot 5. Even though the clerk furnished Lantz with an erroneous statement, this was merely a preliminary to the payment of a special tax and Lantz had no right to close his eyes to the situation, fail to read the statement before paying the amount, or to read his receipt before leaving the office. The clerk had no means of knowing what property Lantz owned and nothing upon which to depend except the statement of Lantz in reference to the tax which he desired to pay. The tax record before the clerk showed that Hattie Andrews owned lot 5, and that M. Z. Noble owned lot 6; the name of Lantz did not appear in connection with either lot. All the evidence is to the effect that Lantz did not tell the clerk what property he owned, or that he owned any property, but merely stated the number of the lot upon which he desired to pay, and there is no evidence that the clerk was requested, or voluntarily proceeded, to compile a statement of the tax due on the property owned by Lantz. The receipt bears evidence that it was paid on the day after the statement was received. If so, the statement was in the possession of Lantz for one day, although his evidence is to the effect that he paid the bill the same afternoon that he received it, and his check by which payment was made bears that date. But this matter is not of decisive weight and the property owner cannot avoid the effect of his own negligence whenever it occurred. A lack of considerate attention to his own affairs and to a courteous inquiry after the payment of the bill is disclosed by his own evidence and that of others.

However, in our view, it matters not who made the mistake, whether the clerk or Lantz, so far as the rights of the owners of the tax bills are involved. They should not be precluded from their proper remedy by reason of the mistake of either or of both. It is conceded that a property owner had the right to pay such tax bills to the city treasurer. The owner of such tax bills could not control this matter, and the owners in the present case did not "permit" the city treasurer to collect for them as their agent, according to the contention of defendant Lantz, and could not have prevented such payment had they sought to do so. The relation of principal and agent in its ordinary sense did not exist between the tax bill owners and the city treasurer, but the law simply created an *agency* through which property owners might pay special taxes without being required to locate the owner of such tax bills and pay him. So far as the record reveals, the owners of the tax bill against lot 6 were entitled to their lien upon said lot and to enforcement thereof, unless it would appear that said owners could be made whole and held harmless by a reinstatement of the tax bill against lot 5, and the trial court held that this could not be done. The decree is erroneous because it fails to do equity to the tax bill owners.

It is evident that a retrial should be had, and likewise obvious that the rights and remedies of all proper and necessary parties should be determined and adjudged with a view of affording available relief to all of said parties. The record, pleadings, decree, and statements of counsel are confusing and incomplete in reference to defendants who are said to have been let out of the case. All that the record shows is that "under sundry and divers demurrers" all other defendants were let out of the case except Lantz and the tax bill owners. There is no showing of any pleading on behalf of any of said defendants, although the decree finds that Mabel D. Shaw is entitled to the remedy sought and adjudges that she is an innocent purchaser of lot 5. The decree does not dispose of the other parties defendant nor adjudge any right or remedy as between them and any other party to the case. All pleadings in the record demand full relief. A complete determination of the rights, interests, and remedies of all the parties would require that all of said persons be retained in the case as parties thereto and that the rights and remedies of all parties *inter sese* be adjudged. According to the statements of the petition, Hattie Andrews, the owner of lot 5 at the time the tax bill against it became a lien thereon, and all subsequent grantees who were parties defendant, knew that the tax bill was a lien on said lot at the time they became purchasers of it or of an interest therein. There is no evidence in the record on this subject, but if the facts be as stated, and if the owners of the tax bill against lot 6 be granted a lien thereon, and Lantz be required

to pay it, then Lantz would clearly have an equitable right of restitution from Hattie Andrews and any grantee who knew the facts at the time an interest in lot 5 was acquired. And further, if all the facts were known as alleged in plaintiff's petition, we see no reason why the tax bill against lot 5 may not be reinstated as a lien thereon and enforced as such, and the payment made by Lantz transferred on the books of the treasurer in satisfaction of the bill against lot 6. But if the facts do not so develop and it appears that the grantee of Hattie Andrews and all subsequent grantees of lot 5 were in fact innocent purchasers, then in any event Lantz, if required to pay the tax bill against lot 6, should be entitled to a judgment against Hattie Andrews for the amount paid in satisfaction of the tax bill against lot 5.

It is not apparent what remedy, if any, would be available to any of the parties against any of the others except in this suit, and it is evidence that any cause of action at law would at this time be barred by limitation and the only forum in which relief could be obtained would be in the forum where this suit was instituted and tried. The court was possessed of the subject-matter and had jurisdiction of all parties in interest and should have proceeded to a full and complete determination of all the rights of all the parties arising from the subject-matter and upon the issues raised. This is particularly true in the instant case which was instituted in 1923, and for some inexplicable reason did not reach this court for hearing until the October, 1931, term. The tax bills in question were issued and became a lien in November, 1920, and it is not shown or contended that any party would have any remedy by action at law or otherwise than in the pending suit.

For the reasons heretofore stated it is clear that plaintiff was not entitled to the remedy sought in his bill because he demanded that the court find and determine that the tax bill on lot 5 had not been paid; that the tax bill on lot 6 had been paid, and that the records in the treasurer's office be corrected to show it. For the same reasons it is also clear that defendant Lantz was not entitled to the relief which he sought; that is, that plaintiff be required to satisfy the lien of the tax bill against lot 6, and that the suit upon the tax bill instituted by Barrie be enjoined. Whether entitled to the relief sought against the city treasurer or not, it is clear that he was not entitled to such relief as against the owners of the tax bill on lot 6.

We have not overlooked the briefs and arguments of the appellants and respondent and the authorities offered to sustain their contentions. Both appellants rely upon the case of Mathews v. Kansas City, 80 Mo. 231, as an authority for excluding any remedy to defendant Lantz as against the city treasurer or owners of the tax

bill, and respondent Lantz relies upon the same case as authority to support him in his contention that if there was a *mutual* mistake it would entitle him to recover against the treasurer. We do not find the authority applicable or in any way determinative under the issues and facts in the instant case. Nor do we deem it necessary to detail the issues and facts in the cited case in order to distinguish it, but merely make the reference to show that such is the fact. It has no bearing whatever upon the rights of a tax bill holder; and from the standpoint of respondent, even though the mistake be regarded as mutual between the city treasurer and Lantz, that would be no justification for destroying the rights of the tax bill owner. We do not agree with respondent in his assertion that he was entitled to rely upon the statement furnished him by the clerk and find that Harness v. Cravens, 126 Mo. l. c. 254, and Mangold v. Bacon, 237 Mo. l. c. 578, cited to support this proposition, are also inapplicable to the issues and the facts here presented. There is a wide difference in the payment of general taxes when the collector is relied upon to furnish the correct amount due on the owner's land, and in the payment of a special tax bill issued against a specified lot. The duty of the parties is not the same.

We are of opinion and hold that the decree entered herein should be reversed and the cause remanded in order that the court may make full and final disposition of the rights of all parties in interest. Appellants and respondent should be given opportunity to bring in all necessary and proper parties, if they are not in court, and all such parties should be required to plead; and any party to the action should be permitted to plead further, if necessary, to meet the ends of justice and to attain a complete determination of all the rights and remedies of any party against any other. The decree should be reversed and the cause remanded with direction to proceed in accordance with the views herein expressed. The Commissioner so recommends. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of Boyer, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded with direction to proceed in accordance with the views therein expressed. *Trimble, P. J.,* and *Arnold, J.,* concur; *Bland, J.,* concurs in result.